UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID MOORE, et al.,

                                        Plaintiffs,

                                                                DECISION AND ORDER

                                                                05-CV-6178L

              v.

ROBERT GUESNO, et al.,

                                        Defendants.
_____

## INTRODUCTION

        The instant case is the fourth lawsuit plaintiffs David Moore ("David") and Janette Moore

("Janette") ("plaintiffs") have filed seeking legal relief and/or monetary damages based on David's

2001 arrest, plea and felony conviction for Coercion in the First Degree.[1]  Plaintiffs continue to

---

        [1] Plaintiffs previously commenced two Article 78 proceedings in New York State
Supreme Court, *see Charity Fellowship Church, Inc. and the Family of Rev. David & Janette
Moore v. Wyoming Co. Dist. Attorney, et al.*, Livingston Co. Supreme Court, Index No. 545-
2002, and *Rev. David Moore v. Wyoming Co. Dist. Attorney's Office, et al.*, Erie Co. Supreme
Court, Index No. I-2004-4204, as well as an action in federal court pursuant to 42 U.S.C. § 1983,
*see The Family of David and Janette Moore, et al. v. Guesno*, 02-CV-6378L, against some or all
of the defendants named in the instant action.  These actions were dismissed as baseless or on
procedural grounds. (*See* decisions dismissing plaintiffs' claims at Dkt. #5-4 (Cornelius, J.S.C.,
July 25, 2002), Dkt. #5-6 (Larimer, U.S.D.J., August 16, 2002), and Dkt. #6 (Kloch, J.S.C., May
28, 2004)).

attack the legal basis and foundation for David's guilty plea and conviction, despite the fact that they have been upheld by the state courts.

Having been unsuccessful in their challenges so far, plaintiffs now turn to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, hoping to achieve better results.  In this latest effort, plaintiffs assert that David's conviction and the resulting injury to his business were the direct result of a RICO conspiracy and the racketeering activities of the thirteen named defendants.[2]

Before the Court are defendants' motions to dismiss the complaint.[3]  (Dkts. ##5, 6, 16).  For the numerous reasons discussed below, defendants' motions are granted.

## PLAINTIFFS' ALLEGATIONS

For purposes of analyzing defendants' motions to dismiss, the Court assumes to be true the factual allegations in plaintiffs' complaint, as supplemented by plaintiffs' RICO case statement. *See Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 378 (2d Cir.2001).

---

[2]  Two defendants are members of Janette's family.  Defendant Santo Consiglio is Janette's father and defendant Vito Consiglio is her brother.  The remaining eleven defendants at all relevant times worked for either the Village of Perry or the Wyoming County District Attorney's Office. The Village of Perry defendants are Chief of Police Robert Guesno, Assistant Chief of Police James Case, former Mayor Dennis Vergason, former Village Board member David Davis, former Village Justice Emmett Milks, former Village Justice Ruth Milks, and Village police officers Donald Parker, Matt Rennie, and Michael Grover.  The Wyoming County defendants are current District Attorney Gerald Stout and former Assistant District Attorney Thomas Reh.

[3]  Only eleven of the thirteen defendants moved to dismiss.  Defendants Santo Consiglio and Vito Consiglio instead answered plaintiffs' complaint.

Plaintiffs claim defendants violated two related provisions of the RICO statute, 18 U.S.C. §§ 1962(c) and (d).  Section 1962(c) prohibits an enterprise from conducting its affairs through a "pattern" of "racketeering activity."  Section 1962(d) prohibits persons from conspiring to engage in activities proscribed by, *inter alia*, § 1962(c). *See GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 465 (2d Cir.1995).

To state a claim under § 1962(c), plaintiffs must allege that each defendant, "through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir.2001).  To state claim for violating § 1962(d), plaintiffs must allege facts "implying any agreement involving each of the defendants to commit at least two predicate acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990).

Plaintiffs allege that the municipal governments of the Village of Perry and Wyoming County constituted a RICO "enterprise," and that the thirteen individual defendants formed an "association in fact" that operated within the enterprise.  Plaintiffs claim defendants conducted the affairs of the enterprise by engaging in a "pattern" of "racketeering activities" over a period of approximately eleven years.  Plaintiff assert that the common purpose of the association in fact was to use defendants' official positions to threaten, harass, extort, coerce, and intimidate victims of, and witnesses to, the criminal activities of the associations' members.

Plaintiffs claim that defendants engaged in witness intimidation in violation of 18 U.S.C. §§ 1512-1513, as well as "coercion a/k/a extortion" in violation of N.Y. Penal Law § 135.65, and committed the following predicate acts:

•      extortion chargeable under state law, by defendant Ruth Milks, who misappropriated between $125,000 and $250,000 through a "parking ticket extortion racket" and who

- 3 -

allegedly engaged in other extortion schemes while employed as a Village Court Clerk and a Village Justice between 1992 and 2003 (Complaint at ¶¶ 28-36);

•   intimidation of a witness named Mary Ripley in 1993, by defendant Donald Parker, acting as an agent of defendant Gerald Stout, to deter Ms. Ripley from attending the trial of an individual named David Kellaway (Complaint at ¶¶ 37-42);

•   intimidation of a witness named Jamie Wise in 2001, by defendant James Case, in order to deter Ms. Wise from pursuing criminal charges against Mr. Case's son (Complaint at ¶¶ 43-48); and

•   intimidation of a witness named Bruce Calkins in about April 2001, by defendants Vito Consiglio and Robert Guesno, in order to deter Mr. Calkins from mounting a political challenge to defendants Dennis Vergason and David Davis (Complaint at ¶¶ 49-60).

Then, according to plaintiffs, David became the target of defendants' racketeering activities. Plaintiffs allege that in April 2001, defendant Chief of Police Guesno and defendant Vito Consiglio ("Vito"), Janette's brother, conspired to knowingly bring false criminal charges against David. Plaintiffs assert that Guesno and Vito set up David in a "sting" operation in order to protect Vito and Janette's father, defendant Santo Consiglio ("Santo"), from facing charges for sexually abusing Janette. Plaintiffs allege that the Wyoming County defendants knew or should have known that the charges against David were false and supported and endorsed the prosecution anyway.

Plaintiffs admit that David pleaded guilty on the record in open court to Coercion in the First Degree.  However, they allege that David did so only under duress.  Plaintiffs contend that the Wyoming County District Attorney's office was threatening to take Janette's child from her, and that David agreed to take what was in essence an "Alford" plea to prevent that from happening.

Plaintiffs assert that have been injured in their business and property as a direct result of defendants' RICO violation.  Immediately following his arrest, David claims that he was released from an infomercial contract pursuant to a character clause in that contract.  Plaintiffs, therefore,

- 4 -

seek damages in excess of $5 million, representing lost profits they claim David would have yielded

under the contract.

## DISCUSSION

### I.  Standing under RICO

The RICO statute grants standing to "[a]ny person injured in his business or property by

reason of a violation of section 1962…." 18 U.S.C. § 1964(c).  To demonstrate standing, plaintiffs

must plead: (1) a violation of RICO, 18 U.S.C. § 1962; (2) an injury to business or property; and (3)

causation of the injury by the violation of § 1962.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d

Cir. 2003) (quoting *Commercial Cleaning Servs.*, 271 F.3d at 380); *see also Pinnacle Consultants,*

*Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir.1996).

At issue here is the third requirement – whether plaintiffs' alleged injuries were caused "by

reason of" defendants' purported RICO violation. *Lerner*, 318 F.3d at 120.  "RICO's use of the

clause 'by reason of' has been held to limit standing to those plaintiffs who allege that the asserted

RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or 'but for,'

cause." *Commercial Cleaning Servs.*, 271 F.3d at 380 (quoting *Holmes v. Sec. Investor Protection*

*Corp.*, 503 U.S. 258, 268 (1992)).

I find that plaintiffs lack standing under RICO because they cannot demonstrate that

defendants' alleged predicate racketeering acts legally and factually caused Janette any direct injury

or caused David to lose the infomercial contract.

### A.  Janette Moore

Initially, I find that Janette's claims must be dismissed because she did not allege that she suffered any *direct* injury to *her own* business or property.  In *Holmes*, 503 U.S. at 268, the Supreme Court found that to establish causation under RICO there must be a "direct relation between the injury asserted and the injurious conduct alleged."  Plaintiffs, however, assert that Janette was "injured in her business and property *through her husband's injury*" (Dkt. #2, ¶4) (emphasis supplied), and that "as David Moore's betrothed and soon to be wife" she was injured by the loss of that contract (Dkt. #2, ¶15).  This is insufficient to state a *direct* injury to Janette for purposes of standing.

There is no dispute that Janette was not a party to the infomercial contract. She lost no profits from the cancellation of the contract. She had no interest in the infomercial contract whatsoever. Instead, Janette claims only an indirect or remote injury, which is not legally compensable under RICO.  *See Anza v. Ideal Steel Supply Corp.*, ___ U.S. ___, 126 S.Ct. 1991, 1996-97 (2006). Janette's injury is contingent upon, and wholly derivative of, David's injury. Were David not injured, Janette would not have been injured.  Under such circumstances, as a matter of law Janette's injury could not have been proximately caused by the alleged RICO violation. *See id*.; *see also Holmes*, 503 U.S. at 268 ("a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.").

Janette argues that because she married David, she had her own "property interest" in the infomercial contract and can be compensated under RICO for the loss of that interest. (Dkt. #12, p. 10).  This argument has no legal support whatsoever.  Furthermore, even assuming that a wife could

acquire a legally cognizable property interest in a contract to which only her husband was a party, the facts of this case do not support such a novel theory anyway. The record is clear that Janette and David were not married during the time that the contract was in existence. The complaint alleges that David was arrested on April 18, 2001, and "learned of the loss of this contract upon his release from the Wyoming County Jail, three days after his arrest." (Complaint, ¶83). This means that the contract was cancelled on or before April 21, 2001. David and Janette were not married until April 27, 2001. (Complaint, ¶5).

Moreover, plaintiffs concede that under RICO, Janette may not recover for whatever personal injuries she suffered as the result of the alleged abuse by her father. *See Laborers Local 17, Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir.1999) (discussing "the lack of a RICO damages remedy for even direct personal injuries" like those suffered by smokers); *Williams v. Dow Chem. Co.*, 255 F.Supp.2d 219, 225 (S.D.N.Y. 2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries.").

Because there are no allegations in the complaint that defendants' alleged RICO violations caused Janette to suffer direct injury to her own "business or property," her complaint is dismissed in its entirety.[4]

**B. David Moore**

I agree with defendants that David has failed to establish that he has standing under RICO. The complaint fails to plead an adequate causal connection between the RICO violations alleged

---

[4] Even if Janette's injuries were not too remote to confer standing under RICO, her claims still would be dismissed for the same reasons that David's claims are dismissed.

(extortion and witness intimidation) and David's injury (the loss of the contract). The alleged "parking ticket extortion racket" by defendant Ruth Milks between 1992 and 2002, and the discrete acts of alleged witness "intimidation" by the other defendants in 1993 and 2001 bear no relationship to David's arrest and the cancellation of the contract. David's pleadings "fail to demonstrate that the injuries he claims having suffered derived from defendants' acts that sufficiently establish the RICO statute's definition of a 'pattern of racketeering activity' or of an 'enterprise'." *Singh v. Parnes*, 199 F.Supp.2d 152, 161 (S.D.N.Y. 2002).

The foundation of David's alleged injury is his claim that the criminal charges for which he was arrested were based on false evidence created by defendant Chief Guesno, Vito, and Santo as party of a RICO conspiracy. However, David concedes that he pleaded guilty in the presence of counsel to the charge of Coercion in the First Degree and he admitted to the conduct that formed the basis of that conviction.[5] His conviction has not been overturned. In fact, the New York State Appellate Division rejected David's challenge to his knowing and voluntary guilty plea. *People v. Moore*, 6 A.D.3d 1093 (4th Dept. 2004) ("The record establishes that defendant [David Moore] was fully advised of his rights and that his plea was voluntarily entered with full knowledge of its consequences"). The New York Court of Appeals denied David's application for leave to appeal. *People v. Moore*, 3 N.Y.3d 644 (2004) (Table). Therefore, David cannot establish that the termination of the contract was the result of anything other than his own admitted criminal conduct.

---

[5] In his plea colloquy, David admitted that on April 9, 2001, he compelled or induced Santo to sign a written statement which Santo had a legal right to refrain from doing, which instilled in Santo a fear that if the statement was not signed that David would cause physical injury to Santo. (*See* Dkt. #6-3, transcript of plea colloquy, at p.12).

In this Circuit, there is a two-step test for deciding the issue of proximate causation in RICO cases.  First, the injury must be a *direct result* of the alleged RICO violation, and not the result of a non-RICO violation or some other intervening action. *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir.2003); *see also Anza*, 126 S.Ct. at 1998 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries").

Second, the injury must be reasonably foreseeable.  *Id.* at 373-74.  "Central to the notion of proximate cause [under RICO] is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were 'a substantial factor in the sequence of responsible causation,' and whose injury was 'reasonably foreseeable or anticipated as a natural consequence.'" *Lerner*, 318 F.3d at 123 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994)).

Here, although the cancellation of the contract by operation of a character clause may have been factually caused by David's arrest, it was not legally caused by the alleged RICO violations of the defendants. David's injury was not a reasonably foreseeable consequence of the extortion racket by Ruth Milks, the witness intimidation by the other defendants, nor the alleged conspiracy to create false evidence.  Plaintiffs allege in their complaint, in fact, that the intent of these defendants was to shield Santo from facing criminal charges for the alleged sexual abuse of Janette, not to cause David to lose the infomercial contract.  Therefore, David's alleged injury was not a reasonably foreseeable natural consequence of the RICO violation.  *Hecht*, 897 F.2d at 24 ("Although Hecht's loss of employment may have been factually caused by defendants' RICO violations, it was not a foreseeable natural consequence sufficient for proximate causation.");

*Lerner*, 318 F.3d at 123 (the purported "racketeering activities" of defendants were not a "substantial factor" in the chain of causation that led to the claimed injury).

## II.  Insufficient Allegations of a Pattern of Racketeering Activity

Further, I find that plaintiffs' complaint fails to allege a sufficient "pattern" of racketeering activity within the meaning of RICO.  "'Racketeering activity' is broadly defined to encompass a variety of state and federal offenses including, *inter alia*, murder, kidnapping, gambling, arson, robbery, bribery and extortion." *DeFalco*, 244 F.3d at 306; *see also* 18 U.S.C. § 1961(1).  A "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ." 18 U.S.C. § 1961(5).  Although only two predicate acts must be present to constitute a pattern, a showing of more than two acts will not always suffice to form a pattern.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) ("The implication is that while two acts are necessary, they may not be sufficient."); *see also United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.1989) ("The legislative history is … inconsistent with a rule that any two acts of racketeering activity, without more, suffice to establish a RICO pattern.").  Moreover, plaintiffs must "show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir.1997).

Turning to plaintiffs' complaint, the predicate acts alleged do not constitute a "pattern" of racketeering activity.  The acts alleged are nothing more than isolated incidents involving different combinations of  Village of Perry and Wyoming County officials at different times over the course of more than ten years.  The acts are unrelated to one another and to defendants' conduct vis-a-vis plaintiffs.  Even giving plaintiffs all reasonable inferences, there is nothing to suggest that the predicate acts are sufficiently "related" to state a claim under RICO.

- 10 -

Instead, plaintiffs unsuccessfully attempt to weave a web between the discrete acts of certain individual defendants that occurred over the course of several years in an effort to pursue a new theory of recovery in this case, their fourth lawsuit attacking David's conviction.  Plaintiffs fail to allege the requisite continuity to sustain a RICO claim, and their allegations regarding the "pattern of racketeering activity" simply do not withstand scrutiny. *See, e.g., First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-82 (2d Cir.2004).

### III.  The Favorable Termination Rule in *Heck v. Humphrey*

Plaintiffs' complaint also must be dismissed because David's conviction has never been invalidated.  Plaintiffs cannot assert a claim for monetary damages based on an injury caused by actions that would somehow undermine an otherwise valid conviction.

David was arrested on April 18, 2001, and pleaded guilty on August 9, 2001, to one count of Coercion in the First Degree, a Class D felony.  He was sentenced to five years' probation.  It is undisputed that David has been unsuccessful in withdrawing that plea or otherwise challenging his conviction in state court. *People v. Moore*, 6 A.D.3d at 1093 (affirming David's conviction and finding that: David's waiver of the right to appeal was voluntary, knowing and intelligent, and encompassed his present contention that the plea allocution was factually insufficient; that David was fully advised of his rights and that his plea was voluntarily entered with full knowledge of its consequences; and that David was not denied effective assistance of counsel).

It is settled law that civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that, "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, *or for harm caused by actions whose unlawfulness would render a conviction or sentence invalid*," plaintiff must show that

the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

The so-called favorable termination rule announced in *Heck* is most often applied in § 1983 cases. But a handful of courts have also applied *Heck* as a basis for dismissing RICO claims that were similar to those at bar. For instance, in *Harrison v. Grand Jurors*, No. 3:05 CV 348, 2006 WL 354218 (N.D. Fla. Feb. 13, 2006), the district court dismissed a federal prisoner's action, brought under RICO against federal agents, federal prosecutors, and a federal judge, that claimed they had engaged in "racketeering activity" and "conspired to obstruct justice, bribe witnesses and suborn perjury" in securing his indictment and conviction on drug charges. The court reasoned that plaintiff failed to show that his conviction had been rendered invalid, which was required by *Heck*. *See also Paulus v. Light*, 121 F.3d 709 (6th Cir.1997) (Table Decision) (plaintiff's RICO claim that the defendants illegally conspired to entrap him into trafficking in stolen vehicles was clearly a challenge to the legality of his conviction and, therefore, was barred by *Heck*).

Likewise, in *Myrick v. Keane*, No. 95-CV-1360, 1998 WL 146275 (N.D.N.Y. Mar. 27, 1998), the district court, based on *Heck*, dismissed plaintiff's complaint that alleged, *inter alia*, a civil RICO claim because the action sought plaintiff's immediate release from custody and damages arising from an allegedly unlawful conviction. Plaintiff did not demonstrate that his conviction was reversed on direct appeal, expunged, or called into question. *See also Hermansen v. Chandler*, 211 F.3d 1269 (Table) (6th Cir. 2000) (applying *Heck's* favorable termination rule to civil RICO claim).

Clearly, if plaintiffs prove what that they allege about the circumstances surrounding David's conviction, a judgment in their favor will necessarily imply that David's conviction is invalid

because it is based on falsely created evidence and a conspiracy by the racketeering defendants. This is precisely what *Heck* forbids.[6]

## IV.    Insufficient Allegation of a RICO Conspiracy

Because plaintiffs fail to state a claim under § 1962(c), the RICO conspiracy claim under §1962(d) also fails. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (citation omitted), *vacated on other grounds*, 525 U.S. 128 (1998); *Nasik Breeding & Research Farm, Ltd. v. Merck & Co., Inc.*, 165 F.Supp.2d 514, 541 (S.D.N.Y.2001) ("because Nasik has failed to assert a substantive RICO claim under Section 1962(c), its conspiracy claim under Section 1962(d) must likewise be dismissed").

Furthermore, the complaint does not allege a RICO conspiracy with sufficient particularity. The complaint contains no allegations of an agreement between each of the defendants to commit at least two predicate acts. *Hecht*, 897 F.2d at 26 n.4 ("the [c]omplaint must allege some factual basis for a finding of a conscious agreement among the defendants."). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Id*. at 25 (citation omitted); *see also Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 581 (S.D.N.Y.1999) ("Plaintiffs'

---

[6] Likewise, in *Simms v. Gibson*, 168 Fed.Appx. 860 (10th Cir. Jan, 20, 2006), an unpublished opinion from the Tenth Circuit, the plaintiff pleaded guilty in state court to drug charges and then filed an action alleging that the state court judge who accepted his guilty plea, the assistant district attorney who prosecuted him, the county clerk, and two law enforcement officials had violated RICO. Citing *Heck*, the Court dismissed the plaintiff's claims that defendants violated RICO by prosecuting and convicting him because those claims "seek to undermine the validity of a conviction that has not been reversed, declared invalid, or otherwise called into question."

allegations of 'a continuous agreement' between [the defendants fell] short of the specificity required to alleged that defendants consciously agreed to commit predicate acts."); *Naso v. Park*, 850 F.Supp. 264, 275 (S.D.N.Y.1994) (dismissing RICO conspiracy claim because the complaint "simply does not make specific factual allegations from which we can conclude that defendants consciously agreed to commit predicate acts").

The only allegation in plaintiffs' complaint that refers to an agreement between the parties is ¶100, which alleges in conclusory fashion that "Defendants were associated with each other through the enterprise, and agreed and conspired to violate 18 U.S.C. § 1962(c); that is, they agreed to conduct and participate, directly and indirectly, in the affairs of the enterprise through a pattern of racketeering activity."   Nothing else on the face of the complaint would connect the series of unrelated, predicate acts, or suggest that defendants entered into an agreement with one another to commit those acts.[7]   The allegations are insufficient to state a conspiracy claim under RICO. *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir.1999) (dismissing civil conspiracy claim under RICO based on plaintiff's failure to allege facts sufficient to state an agreement to participate in a criminal conspiracy).

## V.    Interstate Commerce

Plaintiffs also have not alleged the requisite impact on interstate commerce sufficient to state a claim under RICO.  *See* 18 U.S.C. § 1962.  Plaintiffs' complaint does not allege even a *de minimis*

---

[7]  The only other allegation by plaintiffs regarding an agreement is set forth in their RICO Case Statement, wherein plaintiffs allege that "[t]he conspiracy under 18 U.S.C. 1962(d) is the sum total of the various plots and schemes engaged in by the Defendants, forming one overall conspiracy: to turn the legitimate functions of government and law enforcement into a private profit machine for the Defendants." (Dkt. #2, ¶14).  This is conclusory, and insufficient to state a RICO conspiracy claim.

impact on interstate or foreign commerce. *See De Falco*, 244 F.3d at 309.  The allegations establish

only that the enterprise's activities affected *intra*state commerce.  There are no allegations, however,

that the enterprise's activities somehow affected interstate commerce.

In an effort to avoid dismissal on this basis, plaintiffs' complaint states without elaboration

that, "Although wholly located within one state (New York), this enterprise was engaged in, and its

activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §

1962(c)." (Complaint, ¶¶88, 98).  The Court, however, cannot draw a reasonable inference in

plaintiffs' favor that the conduct alleged would affect interstate commerce.  For this additional

reason, the complaint is dismissed.

## VI.     Defendants Santo and Vito Consiglio

What remains of plaintiffs' complaint are David's claims against Santo and Vito Consiglio.

Neither moved to dismiss the complaint.  Nevertheless, for the same reasons outlined above, I find

that David "can prove no set of facts in support of his claim[s] which would entitle him to relief"

against these defendants. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Harris v. City of

New York*, 186 F.3d 243, 250 (2d Cir.1994).  David's claims against Santo and Vito Consiglio,

therefore, are also dismissed.


## CONCLUSION

Defendants' motions to dismiss (Dkts. #5, 6, and 16) are GRANTED.  Plaintiffs' complaint

is dismissed in its entirety with prejudice.

IT IS SO ORDERED.


DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 10, 2007.